Looks like we're all ready. Go right ahead. May it please the Court, Roger Heller on behalf of Appellant Donald Lusnak. I would like to reserve four minutes for rebuttal. The issue here is whether application of the state law at issue, which is Cal Civil Code 2954.8a, would significantly interfere with Bank of America's powers as Congress intends those powers. And that last part is critical because the Barnett Bank case reminds us that the issue here turns on the question of congressional intent. We have a very unique situation here because Congress has actually spoken directly about the exact type of state law that's at issue here. In 2010, as part of the Dodd-Frank Act, Congress expressly directed all creditors without accepting national banks to follow this exact type of state law in the mandatory escrow context. Now, Bank of America would like you to believe that that has nothing to do with national banks, but that is far from the case. Can I cut through this for a minute? Let's assume you're right for the moment about this. But what about the timing problem, i.e., this was not, in fact, mandatory until well after this mortgage agreement was entered. Is that right? I think it's important to distinguish between the claims that we have that are based on violations of the federal statute and claims that we have that are based on violations of the state statute. Well, yes, but as you recognize, the statutory provision, the federal statutory provision in Dodd-Frank is all of a piece. That is, there's a set of federal requirements regarding escrow, and they undoubtedly apply here, but only as of 2013, right? Is that correct so far? That part is correct in terms of there was no direct obligation under the federal law. In other words, there would not be a direct claim under the federal law until 2013. Yes, and this provision that you're relying on that incorporates state law for one purpose applies to the mandatory escrows that are covered by the section. So how do you get there? Well, because our state law claims are premised on a state statute that has been in effect for 40 years, and this bank has operated under the assumption that it doesn't need to follow that because of federal preemption. But we would submit that as of 2010, not 2013, as of 2010, when Congress expressed its intent in passing the Dodd-Frank Act, Bank of America's position was no longer a viable position because Congress had made its intent clear. That was in 2010, and it wasn't, you know, held in time. Counsel, the statutory language is clear that the creditor's obligation applies only to escrow accounts that is subject to this section. And in reviewing the briefs, I didn't get an explanation as to why that legislation applies to this particular case. So my question is the same as Judge Berzon. I wonder if this is the right case, given that the mortgage agreement in this case predates the enactment of the legislation. The enactment of the federal legislation, but the state law has been on the books for 40 years, and the point is the only reason Bank of America has not complied was federal preemption, but we would submit that as of 2010, when Congress made its intent clear at that point, any preemption defense seems to exist. But what it made clear, excuse me, what it made clear was that in any impound trust or escrow account that is subject to this section, the applicable state or federal law applies. Well, when we're talking about congressional intent, what we're talking about is how Congress conceives of national banks' powers and the scope of those powers and how they relate to the state laws at issue. I would submit that Congress's intent in 2010 was clear, not just with respect to what was directed by the statute, but also in terms of how Congress used the statute. I know you keep saying that, but there's statutory language here, and you need to tell me how I can deal with that. Well, because the statutory language evidences Congress's belief at the time, in 2010, that there is no problem with the application, conceptually, with the application of these exact state laws as to national banks. It doesn't view it as a conflict. It doesn't view it as an affront to national bank powers. And that's clear in 2010. But that argument, though, that argument goes through your preemption argument. Correct. Now the question is, even assuming that your preemption argument is correct, you're also assuming retroactivity. No, no, because our state law claims are based on a statute that was enacted in 1976. We don't depend on retroactivity of the federal law at all. Do you maintain that before the new statute there was no preemption? I think that's an open question. That was certainly Bank of America's position. Our position is, at the very least, as of 2010, any preemption defense ceased to exist when Congress made its intent clear about how it views the scope of national bank powers. Setting aside the chronology that we're talking about, and I fully appreciate the sequencing of these events, but why is it that you're so sure that this type of escrow account is one that is captured? Well, all of Mr. Losnack's agreements, and there are three of them, there was one in 2008, one in 2009, and one in 2011, all of them are federally guaranteed VA loans. It's because of the VA? Yeah. His escrow accounts were all mandatory accounts. They were the exact type of account that Congress was looking at with 1639D, and it's within the scope of B-2. If it is the case that his agreements are not technically within the scope of 1639D, it would be only by virtue of their timing vis-à-vis the effective date. But that, at most — But because they were VA-guaranteed loans, you think they otherwise would qualify. Again, setting aside what I'm calling the chronology or the sequence of events of your preemption argument. Absolutely, yes. These are mandatory escrow accounts because they're VA loans. All right. Yeah, that's correct. The district court applied two bases for reaching the opposite conclusion. Both of them are fatally flawed. The first is the district court applied this extraordinary reading of the word applicable in Subsection G3. That's entirely fundamental to the district court's analysis. The district court's reading of applicable is illogical and also would render the entire section meaningless, and that's because the district court essentially reads this to say, you need to follow these laws unless you don't. And so by definition, any entity that would be covered already needs to follow these laws, so the statute would serve no purpose. And so that couldn't have been Congress's intent. Fortunately, there's a much more logical reading of the word applicable, and that is that applicable State law means the law of the State where the property is located. And what the section is saying is that if that particular State's law or if Federal law prescribes paying escrow interest, you need to act in a manner consistent with that law. Not all States have this type of law, right? Correct. Applicable is about which State. I do have a question about that. I find your argument relatively persuasive sitting alone, but I noticed that the immediately preceding section says the following, administration in accordance with the law of the State if applicable where the real property securing the consumer credit transaction is located. So I would have thought also that applicable meant the State where the real property securing the credit transaction is located, but this immediate preceding sentence says if applicable. So what does that mean? It's phrased slightly differently, but our reading of G3 is consistent with the use of if applicable in G2C, in both instances, that's explainable by the fact that not every State has the law in question. And in the context of G3, which is the provision of issue in this case, even among those States that have these laws, there are variations in terms of the interest rates, but also in terms of the types of escrow accounts that require interest to be paid. And that's why applicable. So if applicable just means if the State law requires it. Right. If the State law requires it and it applies in the context of that particular escrow account, you've got to follow that law. Correct. Has B of A made any showing that this statute significantly interferes with its operation? Absolutely none. And this, you know, we're up here on the pleadings at this point. So there's been absolutely no discovery. There's been no showing of any interference with any of their businesses. And we would submit that there is little if any interference, certainly not rising to the level of significance. Well, but we don't know that. Right. So what relief are you seeking? Well, this Court should reverse the district court's finding of preemption as to the State law claims and should reverse the dismissal of the direct Federal statutory claims and remand for further proceedings. So there would be presumably factual development about that issue, right?  There would have to be. It seems to me that they could still potentially show that there's a significant interference. They would certainly have an opportunity to do so, but I would suggest that they won't be able to. I thought your position is that that's not true because of this – because of 1369G. Well, I think the – you're correct. 1639G. I was assuming that the Court wasn't settled on that issue, but that is correct. Our position is the analysis should begin and end with Congress's language in 1639DG3, right? Potentially that there's an anti-preemption provision and we don't start looking at anything else. Correct. It's not only an anti-preemption provision. It directly speaks to Congress's intent as to the exact State law here, and that should be the end of the analysis because it's an analysis that turns on congressional intent. All of the cases that Bank of America cites, none of those involve that kind of situation where Congress has spoken, and that's a critical distinction for an analysis that turns on congressional intent. The first place you should look is what has Congress said about this, right? In all of the cases Bank of America cites, the answer is nothing. In this case, the answer is Congress has spoken directly about the very State statutes that are at issue. One of the arguments they make is that if Congress wanted to speak directly, really directly, they would have amended a different statute as opposed to the Truth and Lending Act. Sure. I mean, essentially what the district court is saying there is that Congress can only direct banks to follow State law by amending the MBA, but that could not possibly be the case. And you don't need to look any further than the OCC's interpretive regulation, 34.4. Subsection B-9 of that, which is part of the Savings Clause, says that national banks have to follow State laws that are made applicable by Federal law. It doesn't say made applicable by the National Bank Act or some other specific place. It is completely logical here for this section to be in TILA and not the MBA because it applies to more than just national banks. What should we do with the OCC's interpretation? Well, the OCC — The post-Dodd-Frank interpretation. Well, the OCC hasn't actually interpreted this specific issue post-Dodd-Frank. They've made general statements that Bank of America cites to support their position that the law hasn't changed on this. To the extent any of the OCC's interpretations could be read as saying that these State statutes are preempted, that's invalid because it would contradict what Congress has said. The OCC has certain powers. They certainly play a role in this scheme. But they cannot contradict Congress. That's beyond the scope of their power. Were they entitled to Skidmore deference before this amendment, or is that a trimming of its wings? I would say the answer is maybe. I mean, I think at this point — at this point it's moot because Congress is now — Well, it's not moot because I need an answer to the question. How did the case law shake out earlier? I think the answer is likely yes. Likely — so you think that the articulation of Skidmore deference is not a change in the law? No, that is a change in the law, but I thought you were talking about prior. No. I'm talking about post-amendment, post-Dodd-Frank. Post-Dodd-Frank. Is there an indication in the — by articulating Skidmore deference that Congress was pushing back? No, I don't think so. I don't think that's an indication of any change at all. I think — What about the contract claim? Supposing we were to have a problem with the timing here, where does that leave the contract claim? The contract claim is derivative of the other claim. It's just like the UCL claim. It's based on the violation of the state statutory claim. But why is it derivative? I mean, if the — if we thought that there was a problem applying the new statute to this mortgage, the contract would still be the contract. And the — the language is the same, i.e., applicable law, but why wouldn't it then apply — we would interpret it similarly to how we would interpret the statute, but we wouldn't have the timing problem. Well, I think — yeah, I think that's true. You would also not have a timing problem there. But the contract claim is based on the notion of they'll comply with applicable law, and I think if the court — Right. If the court finds that the state law here is not preempted and they haven't paid interest pursuant to state law, then they're not — then they're breaching the contract. As of 2010 — They can't make up a lot, right. — on your scorecard. As of 2010, if not earlier, but certainly as of 2010. But even though this became effective in 2013, right? Well, the direct claim under the federal statute couldn't have been brought until 2013, until the effective date. But the operative date for purposes of the claims that relate to the state law violation is 2010. No, but you keep saying that because on the breach of contract, I circle back to — I'm not sure which of my colleagues asked the question, but it wasn't until 2013 that you could really stand in front of the podium and say state or federal law requires this, right? No. State law has required it. I mean, in 2010, you could say it's federal law — if I bought the rest of your argument, federal law is going to require this in 2013. No, no. State — no, no. What you could say in 2010 was state law has required this for 40 years. The bank has said we don't have to follow this. Okay. And what the bank would say is, yes, that law has been on the books since 1970, whatever it was, and it's been preempted. That's what they would say. They've said it all through this briefing. Okay? Right. The preemption defense, though, ceases to exist in 2010 when Congress makes its intent clear. And that's because the conflict is — Okay. Counsel, this is the part now you're repeating yourself, but could you answer my question? In 2010, because it — and I'm not trying to give you a hard time, but in 2010, why isn't the case that the best you could have said is Congress has expressed its intention, and as of 2013, Federal law isn't going to trump State law? Because when we talk about congressional intent, we're talking about something more conceptual, something that doesn't break down into time periods in that manner, right? We're talking about how Congress conceives of national bank powers and how that relates to the State laws at issue. And it's true that we could not — But that goes back to my retroactivity question, for which I haven't heard a really clear answer. Why doesn't it apply at the time that the Federal legislation was enacted going forward, instead of going back and applying to an escrow account that was established before the legislation was passed? Like, what in the statute tells me that I have to go back in time versus applying it from that date forward? It doesn't. When you talk about applying, you're correct. You would apply it going forward for purposes of enforcing the Federal statute. But Congress — what Congress said in passing Dodd-Frank in 2010 made its intent clear as of 2010, and therefore, the preemption defense goes away. That's the point. So the claims — direct claims under the Federal statute cannot exist until 2013, but the claims that are based on violations of the State law, at least as of 2010, were viable because any preemption defense, which was the only defense, went away. But that gets back to the escrow account subject to the provisions laid out in the statute, right? And I don't know that this escrow account is subject to the provisions of the accounts laid out in the statute. Not in the technical sense that we would be able to bring a direct claim under the statute until the effective date, but in the sense that Congress has expressed its intent more generally, more conceptually, on the subject in 2010. It's made clear — I think the mortgage here was entered into — there was a 2009 — in 2008, 2009, there was a 2011 mortgage modification. Are you arguing that that's what brings you into the statute because it was after 2010? You're just saying it goes all the way back. I think it should go all the way back. At the very least, though, they should have been complying with respect to any escrow balances that relate to the 2011 agreement because that postdates the contract. But we would submit that because the state law is 40 years old, the point is that as of 2010, the preemption defense no longer exists, right, because Congress has made its intent clearer with respect to how it conceives of national bank powers in this area, even though we could not bring a direct claim under the federal statute until the effective date in 2015. You're over your time. Thank you. Counsel, just for planning purposes, we're going to put two more minutes on the because you'll have a short opportunity to respond. Go ahead. Thank you, Your Honor. May it please the Court. Mark Mosier on behalf of the Appellee Bank of America. The district court correctly dismissed plaintiff's claims because the National Bank Act and OCC regulations preempt California's law requiring the payment of interest on escrow accounts. This court can affirm that holding on either of two independent grounds. First, nothing in Dodd-Frank or any other provision of federal law requires national banks to follow state escrow laws in exercising their federal real estate lending powers. Second, even if Section 1639D imposed such a requirement, it would not help the plaintiff because his escrow account was established years before Section 1639D took effect. Counsel, before you go to what I'm calling the sequencing, can you tell me, do you agree that this is the type of account, because it was VA guaranteed, that would otherwise qualify? It was a VA account. So if it had been established after January 2013, it would have fallen. It's the right type of account. Yes. It would be a mandatory account. Yeah, and I think that's under B-2. It would fall under a mandatory account. But here, of course, as you noted, this was established in 2009. The modification in 2011, we wouldn't say constituted a new agreement. There was a modification of some terms once the plaintiff fell behind in some payments, but it wasn't. You know, 2008, we had a refinance in 2009 where effectively the 2008 agreement was completely set aside, a new agreement entered into in 2009 where an escrow account was established. And we would say that was when the escrow account was established for purposes of 2009 to 2011. It really doesn't matter unless you accept this argument that Congress's intent should be determined separate from the statute they enacted. Because I think what's missing from the argument is, yes, Dodd-Frank was enacted in 2010, but in 2010, Congress expressed its intent to change the law in 2013. Right. We get that. Yeah. So could you address this next question that I have? I don't think anywhere B of A has yet showed that this California statute significantly interferes. Why shouldn't you have to do that? Because under the National Bank Act preemption cases, this is decided as a matter of law. And the question is. You cite a lot of those cases that are pre-Dodd-Frank. So just understanding where I'm headed with this, could you give it your best shot? Yeah. I mean, I don't think Dodd-Frank changes the analysis on that. The fact that Dodd-Frank specifically codifies Barnett Bank I think shows. Well, it does that a couple of ways. It codifies Barnett Bank, which Congress surely knew about. Yes. Ahead of time. And it also codified the Skidmore standard. And one way to read that, and many commentators have read that, is an underlining, an emphasis to say, hey, we mean it. Right. We mean it. Right. But I don't think it would change the analysis from a question of law to a question of fact. And before I, and I want to address it on the merits, but I will point out that there was not an argument made before or in the district court that this should be a factual basis. And they did not argue that they should deny a motion to dismiss because there's a lack of evidentiary record. This actually does talk about a case-by-case analysis, which presumably does talk about mean facts. No? No, I think it is. Otherwise, if it's a matter of law, then what would a case-by-case analysis do? It would look at the nature of the state law and determine the extent to which it interferes. So I think the cases I would point this court to, which were both, I guess, post-Dodd-Frank enactment, but maybe before enforcement, were this court's decision in Rose and the California Supreme Court's decision in Parks. Both of those cases involved the California law that required credit card holders to put notices on the convenience checks they gave to their users to let them know that even though this looks like a check, it's actually a credit card transaction. And both this court in Rose and the California Supreme Court in Parks said that was decided as a matter of law in the pleading stage. That law poses significant interference with the exercise of national banks' federal powers. In both cases, the plaintiff argued all they have to do is put language on top of the check. That's not significant. You should remand for an evidentiary determination of significant. This court in Rose and footnote 4, Parks, the entire final section of its decision, expressly rejects that argument. It seems that you're reading the language out of the statute and out of Barnett because you're essentially saying any time a state statute requires us to do something that the federal law doesn't require, that's a significant interference. It does seem like a very sweeping argument. Because we don't want to do it. Because we don't want to do it. Right. No. But the cases have said that the interference does not have to rise to that high of a level to interfere. Because if you go back to why. So I'd like an example. Yeah. I want an example as well. We're asking the same question. What would rise to the level? I certainly think this does. Sorry. What wouldn't rise to the level? In this court's decision in Gutierrez, it said it did not significantly interfere with operations to prevent them from making misleading misrepresentations in its disclosures. Even though, for the most part, disclosures are regulated by federal law, state law, that said you couldn't make an affirmative misrepresentation. That's consistent. Was that a 12-6 ruling? It was following a trial. But it didn't look to the evidence. And this is going back to Rose, what this court said in Rose. There's no amount of evidence that you could find during discovery that would change the analysis that the Supreme Court applied in Franklin National Bank and Barnett Bank, which in both cases, the court said federal law allows you to do this. State law doesn't. And that's a significant interference for purposes of the National Bank Act. Counsel, you really are arguing that just about anything state law does is going to be too much. And what am I to make with Dodd-Frank's case-by-case language? It sounds like you want me to set that aside. This court doesn't have to follow that. That's for the OCC. And the district court did not reach the issue of whether this state law is preempted under the post-Dodd-Frank OCC regulations. We don't think this court needs to do so either. It can do it just based strictly on the National Bank Act. I will note this is not really ñ I mean, I understand the court has concerns with this, and I'm happy to respond to this, but this is not really what they're arguing, right? There's no argument that ñ Yes, but your argument is very sweeping, and it's our job to push against it. And it seems to me like you want us to make a really big, expansive ruling. I don't think we do. And I will note that pre-Dodd-Frank, there's no argument presented by the other side and no authority that would support that to say that this law was not preempted. I mean, it was clearly preempted under the OCC regulations. I think it was preempted pretty clearly under ñ Pre-Dodd-Frank. Pre-Dodd-Frank. Yeah. What about 1639d? You haven't talked about it. Sure. Three. So applicable, we read ñ I understand you have this notion that an applicable state or federal law is a nonpreempted state or federal law. That's a strange way to say that at a minimum. We don't think it's strange to say that a preempted law is not applicable. I mean, if the law is preempted, we think by definition it cannot be applied. And, you know, the way we read Section 1639d, it's also important that it starts with if. This provision is stated in the conditional. If prescribed by applicable state or federal law, then it imposes a requirement. We read that as imposing a separate, distinct threshold inquiry. Before we get to this determination of whether there's a duty, we determine, is there a state law that can apply? And if a state law is preempted, we say by definition it cannot apply. And you look to, as the district court noted, at the time Dodd-Frank was enacted, it was clear that laws of this sort were preempted, and Congress would have known that. And Congress, if you look at the way it's drafted, the if prescribed by applicable law, Congress would have ñ it would be hard for Congress to be clearer. What about the notion that there was no reason to be saying this if you weren't going to apply a state law to federal banks because you were already applying state law to other ñ to non-federal banks? A couple of things is that it's applicable state or federal law. OCC certainly has the authority to impose requirements on federal banks and ñ or on national banks, and if the OCC adopted a requirement, then you would have applicable federal law. So there's a reason why you wouldn't expect national banks to be excluded because it would have to apply with applicable federal law. And the argument that somehow our reading renders the provision superfluous is just ñ is simply incorrect. Why? It still applies to state-chartered banks and to non-bank depository institutions. And I think that's the critical thing. But it already does. What's that? But it already does. But it already does. For purpose ñ as ñ for point ñ There's no preemption. I mean, there's no ñ there's ñ if ñ state law already applies without regard to what federal court ñ federal government says to state entities as to which there's no possible preemption. Right. But now, as a matter of this provision, it also applies to non-bank entities as a matter of federal law. And that's a significant difference. One of the things that Congress was trying ñ And state law ñ why is it a significant difference that state law applies to state entities? No, the federal law. That a non-bank ñ okay. The argument is ñ But non-bank entities. Federal law could apply to non-bank entities. State law part of it. Yes. State law part of it. How does the ñ why would you tell somebody in the world that state law applies if state law applies? Because as a matter ñ because if there's a determination that state law applies, it now also applies as a matter of federal law. So if a non-bank lender, prior to Dodd-Frank, had an obligation to pay interest and didn't do it, that would be a violation of California law. After Dodd-Frank, it is also a violation of federal law. And here's why that's important. By violating this federal law, it is now a violation of the Truth in Lending Act, which means that it brings the supervision and enforcement under the power of the Consumer Financial Protection Bureau. This was one of the main things that Dodd-Frank was intended to do. The non-bank lenders were one of the leading lenders of subprime mortgages. And one of the things that Congress thought was a problem is that there was no federal oversight of non-bank lenders. One of the main portions of Dodd-Frank is to create the CFPB, transfer to the CFPB, enforcement and supervisory powers over federal consumer protection laws. The Truth in Lending Act is one of those. And if you look at 15 U.S.C. 5514, I believe it is, it's Section 1024 of the Dodd-Frank, it explicitly gives the CFPB supervisory authority over non-depository lenders, a supervisory authority that didn't exist before. But what it says, so after this Dodd-Frank provision, now the CFPB can supervise non-bank lenders the same way that the OCC supervises national banks. Did you argue that in the red brief? Did you make that argument? No, but we pointed out that it applies to non-bank lenders. And that's, I don't think they dispute that point, that it applies to non-bank lenders. But the point is, if you look at the supervisory authority that CFPB has, it's limited to enforcing federal law. Nothing in Dodd-Frank gives the CFPB the authority to enforce state law. So if you say it doesn't matter that this is a state or federal, it does matter. And I think not only does it matter, it's a reason that Congress certainly would have been hoping to achieve. You know, if we talk about the other, this was mentioned, the fact that, you know, one of the reasons that the judge gave is that it was odd that Congress wouldn't have amended the National Bank Act itself. You know, and I think we don't, we're not arguing that that should be dispositive, that there's only one way to go about it. But I do think it is, it's powerful evidence. And it's powerful evidence because if you look at the history of the National Bank Act, national banks, of course, are creations of federal law. They only have the powers that federal law grants to them. And when Congress grants a power to a national bank, it typically includes the limitations directly on that power. And there are many instances throughout the National Bank Act where the same provision that grants a power also conditions the exercises of that power on state law. If you look at Barnett Bank's discussion of this issue, and this is where it gets insane, well, normally we don't think that Congress has intended a national bank to comply with state law unless it does so expressly. The reason it says that is it can point to a number of places in the statute where Congress has done that. And the cases where, the only cases we're aware of, we're not aware of any case in which a court has ever held that Congress limited a national bank's power to comply with state law sort of this indirectly. All of the cases, and Barnett Bank talks about them, these are mainly the McFadden Act cases. So we're talking about First National Bank of Logan, Utah, and Plant City. Those cases say, the provision says that national banks may open branches to the same extent that a state bank could have done it. And that's, against that backdrop, what Congress said, or what the Supreme Court said in Barnett Bank, is that if Congress wanted national banks to comply with state law, we see that they usually do it by saying so expressly at the same time. You're arguing that we have to find express preemption, and that's plainly wrong. Can I ask one question? Sure. If this statute, 1639G, didn't have the word applicable in it, would you agree that it applied? I think it would be a much more difficult question. I think you could still make an argument that a preemptive law is not law. And I think the Supreme Court's decision in De La Cuesta would provide support for that, and this actually also goes to your question about the contract. Because in De La Cuesta, the provision that was an issue was a provision in a contract that said that required the bank to comply with the laws of your jurisdiction, and it wasn't considered a law of your jurisdiction if it was preempted. So I think that would be, you know, I think it would be a closer call. But applicable, I think applicable makes it easy, because I think for us a law that's preempted is by definition cannot be applied. And that's not applicable. If there are no further questions. Thank you for your argument, counsel. It was very helpful. Just to address a couple of points. Counsel, but I know, but I'll give you some more time. But here's my question. I came in wondering if 1639G3 doesn't apply to federally regulated banks, who's it apply to? And his response is that Congress is speaking to non-bank entities. Right. I don't think there's any support for that. I mean, the concept that somehow Dodd-Frank was not focused on large banks like national banks is absurd. I mean, that's we know that Dodd-Frank was heavily focused on cleaning up what was happening at large banks just like Bank of America. That's a real stretch. I mean, they're basically trying to find support for that position, but it's not there. The other point that I would. No, but more generally what he said was it would apply to state banks, not only non-bank entities, and make the requirement a requirement of federal law, which does give us some purpose. Well, conceivably that could be a purpose. That would seem like a very unusual purpose for Congress to add that section. The other point that I would make. Well, why? Why? Because it doesn't have any effect. There's already a requirement to follow that law. Okay, so now that's the argument in your brief. All right. Yeah. The other point that I would make that's related is that Bank of America concedes that Section 1639D generally applies to it. So this argument that somehow this section needed to be in the National Bank Act and not TILA makes no sense. They concede that the other subsections of 1639D apply to it. So obviously Congress can make national banks do things in places other than the National Bank Act. The last point that I wanted to make is that the pre-Dodd-Fank authorities that they cite, both the case law and the OCC's interpretations, obviously didn't have the benefit of Congress's expression of intent in 2010, and so they're overridden by what Congress did in 2010. Your response to an earlier question surprised me, though. I asked about Congress's expression or perhaps reiteration, I think, of Skidmore and Barnett Bank, and you said you think that was not significant. No, I didn't say that wasn't significant. Let me clarify that in case I'm sorry about that. I think you did. So what do you think I should make of that? I didn't mean that it wasn't significant. That was the status quo pre-Dodd-Frank, right? Right. Well, the significance of it was it reinforced that the primary focus of the analysis is on congressional intent by invoking Barnett Bank, by officially codifying Barnett Bank as the standard. Yes, the OCC still has their role, but they can't contradict Congress, and Congress's intent is the first place and the last place you need to look in this case. Judge Berzon, any further questions? No, thank you. Thank you all. That concludes our arguments for today. We'll be in recess. All rise.
judges: Berzon, Christen, Nguyen